IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| **NEBRASKA BEEF, LTD.,** a Nebraska Limited Partnership, | ) ) ) | |
| Plaintiff, | ) ) ) | |
| vs. | ) ) | 8:09-cv-00043-LSC-FG3 |
| **MEYER FOODS HOLDINGS, LLC,** a Delaware Limited Liability Company, and **MEYER NATURAL FOODS, LLC,** a Delaware Limited Liability Company, | ) ) ) ) ) ) | ORDER |
| Defendants. | ) | |

This matter is before the magistrate judge pursuant to 28 U.S.C. § 636 and the general order of referral on the motion to compel discovery (Doc. 76) filed by Meyer Foods Holdings, LLC and Meyer Natural Foods, LLC (together, "Meyer"). The court has considered the response (Doc. 80) filed by Nebraska Beef, Ltd. ("Nebraska Beef") and finds that the motion to compel should be denied.

**I. BACKGROUND**

A.  **Nature of the Dispute**

The pleadings (Docs. 1, 26 and 33) indicate that in 2008, Nebraska Beef entered into agreements with Meyer Foods Holdings, LLC ("Meyer Holdings") and Meyer Natural Foods LLC ("Meyer Foods") to provide custom beef processing services. Meyer Holdings is the "indirect parent company" of Meyer Foods. From May 30, 2008 through July 5, 2008, Nebraska Beef shipped the finished product to the customers of CNF Acquisition LLC ("CNF"), as directed by the defendants. CNF is a subsidiary of Meyer Holdings and held a license to use the "Coleman Natural" brand.

On or about June 30, 2008, the Food Safety and Inspection Service (FSIS) of the U.S. Department of Agriculture announced that Nebraska Beef was recalling approximately 531,707 pounds of ground beef components that might have been contaminated with E. coli 0157:H7. A number of "Coleman Natural Beef" brand products that Nebraska Beef had processed for the defendants were listed as products subject to the recall. On or about July

3, 2008, the recall was expanded by the FSIS to approximately 5.3 million pounds of certain beef products produced between May 16 and June 26, 2008.

By letter dated July 1, 2008, Nebraska Beef's customers were notified that Nebraska Beef was in the process of voluntarily recalling certain beef products that might contain E. coli 0157:H7. In a second letter dated July 1, 2008, Nebraska Beef advised the recipients that, if they had any of the products listed in the enclosed recall notice, they were requested to cease distribution of the products immediately, contact Nebraska Beef, and Nebraska Beef would arrange for the product to be picked up. The recall notice included several "Coleman Natural" brand products.

On August 8, 2008, the FSIS announced that Nebraska Beef was recalling approximately 1.2 million pounds of primal cuts, subprimal cuts and boxed beef that may be contaminated with E. coli 0157:H7, including certain "Coleman Natural" products processed by Nebraska Beef. By letter dated August 8, 2008, Nebraska Beef asked its customers to review their inventory records and segregate and hold the products included in the recall, and to contact the customers to whom products were shipped and ask that they return the products. This recall was expanded on August 14, 2008.

Defendants allege they advised Nebraska Beef that legal claims were being made against it related to contaminated beef products and demanded that Nebraska Beef indemnify it against all such claims. Nebraska Beef denies the contamination originated at its processing plaint, that it was negligent in processing or handling any cattle or product, or that it breached its agreements with the defendants.

In its complaint, Nebraska Beef alleges that the agreements between it and the defendants are silent as to the issue of indemnification. Nebraska Beef seeks a declaration of its rights and liabilities as to the defendants with regard to the recalled beef products.

In its counterclaim, Meyer Holdings states that, in response to the FSIS recall announcements and letters Nebraska Beef sent to its customers, Meyer Holdings and its subsidiaries retrieved, held, and ultimately destroyed all of the relevant beef products procured from Nebraska Beef. Meyer Holdings alleges it was obliged to issue customer credits in exchange for the recalled product and incurred expenses in retrieving, storing and destroying the recalled beef. Nebraska Beef did not refund the amounts Meyer Holdings paid for beef cattle slaughter, fabrication, processing and handling services subject to the recall. Meyer Holdings asserts claims against Nebraska Beef for breach of contract, negligence, and indemnification and seeks a declaratory judgment that Nebraska Beef owes a duty of indemnification to Meyer Holdings.

Nebraska Beef, in turn, denies any liability to Meyer Holdings. It affirmatively alleges, *inter alia*, that Meyer Holdings' own negligence limits or precludes its claim for indemnity from Nebraska Beef.

**B. The Motion to Compel**

Meyer now seeks an order compelling Nebraska Beef to respond to Meyer's Interrogatories Nos. 24 and 25, and to produce all documents described in Meyer's Request for Production No. 46.

Interrogatories Nos. 24 and 25, and Nebraska Beef's responses thereto, are as follows:

24. Identify all claims for personal injury, financial damages and for property damage of which you are aware which allegedly arose out of the recall and recall updates referenced in [Nebraska Beef's] Answer to Counterclaim, identify each claim by claimant name and attorney, and indicate in each instance whether said claim is currently in litigation and the current status of such litigation.

RESPONSE: Objection. This request is overly broad and unduly burdensome and encompasses information that is subject to the attorney-client privilege and the attorney work-product doctrine. Additionally, the request seeks information which is irrelevant and the request is not reasonably calculated to lead to the discovery of admissible evidence at trial. Information regarding damages sustained by individuals not parties to this lawsuit and in no way related to Meyer Foods cannot impact claims between the parties at issue in this case. Additionally, the request seeks information about individuals not parties to this lawsuit and information that is protected under HIPAA. Nebraska Beef is obligated according to the terms of various settlement agreements, as well as federal law, to protect the privacy rights of individuals and, in particular, the specific information that is sought in this request. No responsive documents will be provided.

25. With respect to each of the claims referenced to in response to Interrogatory No. 24, state which of these claims have been settled by you or on your behalf, the amounts paid in settlement of each such claim, and source of the funds used to settle the claim.

RESPONSE: Please see the response to number 24 above.

-3-

Meyer's Document Request No. 46, and Nebraska Beef's response thereto, provide:

 46. [Please produce] All documents, communications, e-mails, pleadings, stipulations, settlement agreements, and other agreements in any way related to all personal injury, financial damages and/or property damage claims of which you are aware and which allegedly arose out of the recall and recall updates referenced in [Meyer Holdings'] Counterclaim and [Nebraska Beef's] Answer to Counterclaim.

 RESPONSE:  Objection. This request is overly broad and unduly burdensome and encompasses information that is subject to the attorney-client privilege and the attorney work-product doctrine. Additionally, the request seeks information which is irrelevant and the request is not reasonably calculated to lead to the discovery of admissible evidence at trial. Information regarding damages sustained by individuals not parties to this lawsuit and in no way related to Meyer Foods cannot impact claims between the parties at issue in this case.  Additionally, the request seeks information about individuals not parties to this lawsuit and information that is protected under HIPAA.  Nebraska Beef is obligated according to the terms of various settlement agreements, as well as federal law, to protect the privacy rights of individuals and, in particular, the specific information that is sought in this request.  No responsive documents will be provided.

The evidence index provided by Meyer includes correspondence[1] discussing the chain of distribution for the Coleman Natural Beef products. The record shows that the products were processed by Nebraska Beef, distributed to retailers serviced by Meyer's subsidiary, CNF, and were ultimately sold to individual customers by retailers in at least 12 states. Over 40 individual customers asserted claims against the retailers. The retailers demanded indemnification from Meyer, and Meyer now demands indemnification from Nebraska Beef.

### III. LEGAL ANALYSIS

The scope of discovery in federal civil actions is set out in Rule 26 of the Federal Rules of Civil Procedure. Under Rule 26(b)(1), the parties to a lawsuit may obtain discovery regarding "any nonprivileged matter that is relevant to any party's claim or defense[.]" Relevant information need not be admissible at trial "if the discovery appears reasonably

---

[1] The index (Doc. 78) contains confidential information that could not be redacted and was filed under seal pursuant to a Protective Order (Doc. 54).

calculated to lead to the discovery of admissible evidence." *Id*. Relevancy is broadly construed, and a request for discovery should be considered relevant if there is 'any possibility' that the information sought may be relevant to the claim or defense of any party. A request for discovery should be allowed 'unless it is clear that the information sought can have no possible bearing' on the claim or defense of a party." *Moses v. Halstead*, 236 F.R.D. 667, 671 (D. Kan. 2006) (footnotes omitted).

In this instance, Meyer contends that the discovery sought is relevant to its demand for indemnification. Nebraska Beef alleges, at paragraph 15 of the Complaint, that "Pursuant to the express terms of the agreement(s) between NE Beef and Meyer Natural Foods, NE Beef has no duty to indemnify [Meyer.]" Although Meyer denied all these allegations in the Answer (Doc. 26 at p.3 ¶ 15), the parties' written agreements were not provided to the court in conjunction with this discovery dispute, and Meyer's claim for indemnification does not appear to arise from any contractual "indemnification clause." Thus, for purposes of deciding this motion, the court assumes that the parties' demands for indemnification are noncontractual and arise under the common law of the State of Nebraska.

"'Under Nebraska law, indemnification is available when one party is compelled to pay money which in justice another ought to pay, or has agreed to pay, unless the party making the payment is barred by the wrongful nature of his conduct.'" *Morrison Enter., LLC v. Dravo Corp.*, 2009 WL 4330224 at *13, Case No. 4:08CV3142 (D. Neb. Nov. 24, 2009) (quoting *Warner v. Reagan Buick, Inc.*, 240 Neb. 668, 483 N.W.2d 764, 771 (1992)). "'Noncontractual indemnity applies to situations in which a person discharges a liability which has been imposed on him as a matter of law, but which, because of another's actual fault, should have been discharged by the other.'" *Strong v. Nebraska Natural Gas Co.*, 476 F. Supp. 1170, 1174 (D. Neb. 1979) (quoting *Danny's Const. Co., Inc. v. Havens Steel Co.*, 437 F. Supp. 91, 93 (D. Neb. 1977)). "'[U]nder Nebraska law noncontractual indemnity will be denied where a tortfeasor's conduct was actively or affirmatively negligent or where the tortfeasor's liability is based on actual wrongdoing as opposed to constructive or technical fault.'" *Brassette v. Burlington Northern Inc.*, 687 F.2d 153, 155 (D. Neb. 1982) (quoting *Strong v. Nebraska Natural Gas Co.*, 476 F. Supp. at 1174).

Considering the nature of the remedy of noncontractual indemnification, the court agrees with Nebraska Beef that Meyer cannot seek indemnification for claims that have not been asserted against Meyer. In this instance, Meyer seeks detailed information about claims or settlements which are related to the 2008 recalls, but were resolved or paid directly by Nebraska Beef and do not involve any claims against Meyer.

The court finds that Meyer's discovery requests seek information that is not relevant to Meyer's claim for noncontractual indemnity and that Meyer's motion to compel discovery should be denied.

## ORDER

**IT IS ORDERED** that the motion to compel discovery (Doc. 76) filed by Meyer Foods Holdings, LLC and Meyer Natural Foods, LLC is denied.

**DATED February 24, 2011.**

BY THE COURT:

s/ F.A. Gossett, III
**United States Magistrate Judge**